ACCEPTED
03-14-00252-CR
5220557
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/8/2015 5:46:34 PM
JEFFREY D. KYLE
CLERK

NO. 03-14-00252-CR

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/11/2015 3:00:00 PM
JEFFREY D. KYLE
Clerk

**JOHN JOSEPH FOSTER,**

Appellant

v.

**THE STATE OF TEXAS,**

Appellee

On Appeal from Trial Court Cause No. 13-05449-2
In the County Court at Law Number Two, Williamson County, Texas
Hon. Wilford Flowers, Presiding

**STATE'S BRIEF**

THE HONORABLE DEE HOBBS
WILLIAMSON COUNTY ATTORNEY

JAMES J. LAMARCA
Assistant County Attorney
Williamson County, Texas
State Bar No. 24074568
405 Martin Luther King, # 7
Georgetown, Texas 78626
PHONE: (512) 943-1111
FAX: (512) 943-1120

Attorney on Appeal for the State

ORAL ARGUMENT REQUESTED

i

## IDENTITY OF PARTIES AND COUNSEL

**Appellant**
John Joseph Foster

**Appellate Counsel for Appellant**
Kristen Jernigan
207 S. Austin Avenue
Georgetown, Texas 78626

**Trial Counsel for Appellant**
Eve Alcantar-Schatelowitz
1704 San Antonio Street
Austin, Texas 78701

Jana Ortega
810 W. 18th Street
Austin, Texas 78701

Ed Walsh
405 Round Rock Avenue
Round Rock, Texas 78664

**Trial Counsel for the State**
Brandon Dakroub
Warren Waterman
Assistant County Attorneys
Williamson County Attorney's Office
405 Martin Luther King Street, #7
Georgetown, Texas 78626

**Appellate Counsel for the State**
James J. LaMarca
Assistant County Attorney
Williamson County Attorney's Office
405 Martin Luther King Street, #7
Georgetown, Texas 78626

ii

# TABLE OF CONTENTS

Identity of Parties and Counsel ............................................................. ii

Table of Contents ................................................................................ iii

Table of Authorities ............................................................................ iv

Statement of the Case .......................................................................... 1

Statement of Facts .............................................................................. 1

Summary of the Argument .................................................................... 6

Argument ............................................................................................ 7
    STATE'S RESPONSE TO APPELLANT'S FIRST POINT OF ERROR ........... 7
    STATE'S RESPONSE TO APPELLANT'S SECOND POINT OF ERROR .... 11
    STATE'S RESPONSE TO APPELLANT'S THIRD POINT OF ERROR ........ 15
    STATE'S RESPONSE TO APPELLANT'S FOURTH POINT OF ERROR .... 17
    STATE'S RESPONSE TO APPELLANT'S FIFTH POINT OF ERROR ......... 20

Prayer ................................................................................................ 22

Certificate of Compliance .................................................................... 24

Certificate of Service .......................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) ...................... 13, 24, 25

*Arizona v. Fulmanante*, 499 U.S. 279 (1991) ......................................................... 13

*Bagheri v. State*, 329 S.W.3d 23 (Tex. App. San Antonio 2010) ........................... 25

*Baker v. State,* 177 S.W.3d 113 (Tex. App. – Houston [1st Dist.] 2005 no pet.)... 25

*Barrientes v. State*, No. 03-08-00101-CR, 2009 Tex. App. LEXIS 1915 (Tex. App.
– Austin, March 18. 2009, pet. ref'd) (not designated for publication) ........ 21, 24

*Batiste v. State*, 888 S.W.2d 9 (Tex. Crim. App. 1994) ......................................... 13

*Blackshear v. State*, 385 S.W.3d 589 (Tex. Crim. App. 2012) ............................... 12

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) ......................................................... 12

*Camacho v. State*, 864 S.W.2d 524 (Tex. Crim. App. 1993) ................................. 25

*Chambers v. State*, 805 S.W.2d 459 (Tex. Crim. App. 1991) .......................... 16, 18

*Clayton v. State*, 235 S.W.2d 772 (Tex. Crim. App. 2007) ................................... 15

*Cohn v. State*, 849 S.W.2d 817 (Tex. Crim. App. 1993) ................................. 22, 23

*Delgado v. State*, 235 S.W.3d 244 (Tex. Crim. App. 2007) ................................... 26

*Doyle v. Ohio*, 426 U.S. 610 (1976) ....................................................................... 11

*Estrada v. State*, 313 S.W.3d 274 (Tex. Crim. App. 2010) .............................. 13, 20

*Eun Chae v. State,* No. 13-12-00655-CR, 2013 Tex. App. LEXIS 11346 (Tex.
App. – Corpus Christi, September 5, 2013, no pet.) (not designated for
publication) ................................................................................................... 23

*Fletcher v. Weir*, 455 U.S. 603 (1982) ................................................................... 11

*Ford v. State*, 305 S.W.3d 530 (Tex. Crim. App. 2009).................................... 12

*Franklin v. State*, 693 S.W.420 (Tex. Crim. App. 1985)................................. 12, 14

*Green v. State*, 934 S.W.2d 92 (Tex. Crim. App. 1996)................................... 19, 22

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) .................................. 15

*Jackson v. Virginia*, 443 U.S. 307 (1974)....................................................... 15

*Miranda v. Arizona*, 384 U.S. 436 (1966). ..................................................... 11

*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1990) ................ 19, 20, 22

*Orona v. State*, 791 S.W.2d 125 (Tex. Crim. App. 1990) ................................ 14

*Poole v. State*, 974 S.W.2d 892 (Tex. App. – Austin 1998, pet. ref'd) ...... 20, 21, 24

*Porter v. State*, 709 S.W.2d 213 (Tex. Crim. App. 1986) ................................ 26

*Rey v. State*, 897 S.W.2d 333 (Tex. Crim. App 1995).................................... 13

*Sanchez v. State*, 707 S.W.2d 575 (Tex. Crim. App. 1986)............................. 12

*Sarinana v. State*, No. 03-13-00167-CR, 2014 Tex. App. LEXIS 9524 (Tex. App. – Austin, August 27, 2014, pet. ref'd.) (not designated for publication).............. 23

*Tex. Dep't of Pub. Safety v. McHugh*, 2014 Tex. App. LEXIS 11733 (Tex. App. – Austin, Oct. 24, 2014, no pet.).......................................................... 25

*Urtado v. State*, 333 S.W.3d 418 (Tex. App. – Austin 2011, pet. ref'd)............... 13

*Webb v. State*, 760 S.W.2d 263 (Tex. Crim. App. 1988)................................ 20

*Wesbrook v. State*, 29 S.W.3d 103 (Tex. Crim. App. 2000)............................. 26

*Wheatfall v. State*, 882 S.W.2d 829 (Tex. Crim. App. 1994).......................... 14

**Statutes**

TEX. CODE. CRIM. PROC. art 38.08 ............................................................ 12

TEX. PEN. CODE §49.04(a) ...................................................................... 16

**Rules**

TEX. R. APP. P 44.2(a) ............................................................................ 14

TEX. R. APP. P. 33.1 ................................................................................ 13

TEX. R. APP. P. 38.2(a)(1)(B) ................................................................... 5

TEX. R. APP. P. 9.4(i)(2)(C ...................................................................... 28

TEX. R. EVID. 401 .................................................................................. 20

TEX. R. EVID. 402 .................................................................................. 20

TEX. R. EVID. 403 .................................................................................. 20

**Constitutional Provisions**

TEX. CONST. art. I §10 ........................................................................... 12

## STATEMENT OF THE CASE

Appellant's brief contains a satisfactory statement of the case. *See* TEX. R. APP. P. 38.2(a)(1)(B).

## STATEMENT OF FACTS

On June 29, 2013, at approximately 11:00 p.m., Grayson Kennedy, an off-duty deputy with the Williamson County Sheriff's Office, observed a vehicle he later learned was driven by Appellant, rapidly approach his car and almost strike it as he passed. (RR4: 111-12). He also observed Appellant run a red light. (RR4: 113). At that point, Dep. Kennedy called the Cedar Park Police Department to report Appellant's hazardous driving. (RR4: 113). At trial, a recording of that phone call was entered into evidence as State's Exhibit 1 and played for the jury. (RR4: 121). During the call, Dep. Kennedy stated that Appellant was going in excess of 75 miles per hour in a 60 mile per hour zone. (RR4: 122). Appellant then continued to go through a red light without slowing down. (RR4: 123-24). When Appellant left the city limits of Cedar Park, Dep. Kennedy called the Williamson County Sheriff's Office to inform them of Appellant's hazardous driving. (RR4: 124). At trial, a recording of that phone call was entered into evidence as State's Exhibit 2 and played for the jury. (RR4: 125). During this phone call, and again on direct examination, Dep. Kennedy stated that while he was trying to follow

1

Appellant, he was going 90 miles per hour and Appellant was pulling away from him. (RR4: 126). Again, this all took place in a 65 mile per hour zone. (RR4: 126). During all of this, Dep. Kennedy observed Appellant commit additional traffic violations, including failing to dim his bright headlights, and failing to maintain a single lane. (RR4: 129-30). Appellant's traveling in excess of the speed limit continued along the I-35 frontage road, and on to I-35 itself, reaching speeds in excess of 100 miles per hour. (RR4: 135, 137, 140). Appellant also continued to be unable to maintain a single lane, and failed to signal his lane changes. (RR4: 136, 139). Ultimately, Trooper Joseph Stuart with the Department of Public Safety was able to stop Appellant. (RR4: 143). Trooper Stuart did not personally observe Appellant commit any traffic violations. (RR5: 21).

When Trooper Stuart made contact with Appellant, he noticed that Appellant's car smelled of alcohol. (RR4: 176). Upon being asked whether he had been drinking, Appellant admitted that he had a beer and another drink, starting at approximately 7:00 that night. (RR4: 179). He reiterated this response later on, clarifying that the second drink was a vodka drink. (RR4: 201). Trooper Stuart then administered standardized field sobriety tests on Appellant, beginning with the Horizontal Gaze Nystagmus test. (RR4: 188). While the test normally consists of three parts, yielding a total of six possible clues of intoxication, Trooper Stuart admitted that he forgot to conduct the last part. (RR4: 188). Nevertheless, the other

2

two parts of the test yielded four clues of intoxication, the threshold number of clues that indicate intoxication. (RR4: 189). Trooper Stuart then administered the Walk and Turn test, yielding a total of two clues, meeting the threshold number of clues to indicate intoxication. (RR4: 197). The Walk and Turn test was followed by the One Leg Stand test, which also yielded a total of two clues, also meeting the threshold number of clues to indicate intoxication. (RR4: 197). After these tests, Trooper Stuart came to the conclusion that Appellant was intoxicated and placed him under arrest. (RR4: 201, 206). Before placing him under arrest, Trooper Stuart allowed Appellant to sit in his car. (RR4: 198-99). Also before placing Appellant under arrest, Trooper Stuart turned his body microphone off for about 20 seconds. (RR4: 201). He testified at trial that during this time, nothing was said. (RR4: 202). Trooper Stuart then had a conversation with Trooper Nathaniel Head who was assisting in keeping the scene safe, about what he should do. (RR4: 202). At one point Trooper Stuart told Trooper Head that "the clues weren't solid." (RR4: 204). At trial, Trooper Stuart explained that he meant that he had the minimum number of clues on each test, not that he was not sure that the clues existed. (RR4: 204). Trooper Head also testified that he had an opportunity to view the video of Trooper Stuart's investigation, and based on what he saw, that he would have made the same decision to arrest Appellant. (RR5: 58-59). Trooper Stuart proceeded to arrest Appellant and transported him to the Williamson County Jail. (RR5: 6)

3

Upon arrival at the jail, Trooper Stuart brought Appellant to the intoxilyzer room where he obtained a sample of Appellant's breath. (RR5: 6-7). At trial, Trooper Stuart testified that continuously observed Appellant the required 15 minutes before beginning the test. (RR5: 9). The circumstances of that 15 minute waiting period were a point of contention at trial. At a pre-trial hearing, Trooper Stuart testified that he watched the Appellant in the intoxilyzer room through a window for the required period of time. (RR2: 61). He also stated that there was another certified intoxilyzer operator in the room with Appellant. (RR2: 64). At trial, Trooper Stuart admitted that he had not remembered the events of that night correctly during the pre-trial hearing and that there was no window and no other operator. (RR5: 13). He admitted to his errors, and stated that he did in fact stay with Appellant through the observation period. (RR5: 14).

After the required 15 minute observation period, Appellant gave two samples of his breath, which showed blood alcohol concentrations of 0.092 and 0.090, above the legal limit of 0.080. (State's Exhibit 10). Appellant was then booked into the Williamson County Jail by Lieutenant Dwayne Williams. (RR5: 73). During the intake process, Lieutenant Williams noted that Appellant was upset and apologetic. (RR5: 73). He also smelled an odor of alcohol on Appellant's breath. (RR5: 74, 77).

4

At trial, the State called Zack Kilborn, the breath testing technical supervisor with the Department of Public Safety in Austin. (RR5: 79). Mr. Kilborn is responsible for the maintenance of the breath testing instruments in the Central Texas area. (RR5: 70). At the time of Appellant's test, the instrument he used was completely operational. (RR5: 85). Copies of the instrument records were admitted into evidence without objection. (RR5: 88). Mr. Kilborn explained exactly how the instrument worked and why the results were completely reliable, including the functioning of any safeguards against radio, chemical, or other interference. (RR5: 88-99, 103-105).

The Appellant called a number of witnesses as well, including A.J. Keirn, a private investigator who challenged Deputy Kennedy's timeline of events. (RR5: 127). Essentially, Mr. Keirn testified that by his testing and driving the same route as Appellant and Dep. Kennedy, he arrived at the locations described by Dep. Kennedy at different times than Dep. Kennedy testified to. (RR5: 136-37). Additionally, Appellant called Charles Foster, a retired peace officer, who testified that he reviewed the patrol video from Trooper Stuart taken on the night of the arrest. (RR5: 145-46). Mr. Foster alleged that Trooper Stuart made mistakes in conducting the tests and giving instructions which, according to Mr. Foster, invalidated the tests. (RR5: 149-50, 159). Deputy Deanna Lewis testified that Trooper Stuart could not have watched Appellant through the intoxilyzer room

window as he stated he had when testifying at the pre-trial hearing. (RR5: 183). Finally, Appellant called Mary Catherine McMurray, an expert and independent consultant on the Intoxilyzer 5000. (RR6: 5). Ms. McMurray testified that she did not believe that the breath tests were reliable for reasons including an alleged failure to check for potential outside interference, such as radio interference, even though the instrument would not give a reading if there was interference. (RR6: 12, RR5: 103-04). She also believed that the instrument was not properly calibrated. (RR6: 23). After Ms. McMurray's testimony, the defense rested and closed.

## SUMMARY OF THE ARGUMENT

Appellant's first point of error should be overruled because while the State made an alleged comment on Appellant's right to remain silent, Appellant failed to preserve error by a proper objection and brings this point for the first time on appeal. A proper objection is a prerequisite to alleging that the State commented on a defendant's silence. Furthermore, even if there was error, said error would have been harmless.

Appellant's second point of error should be overruled because there was more than sufficient evidence that Appellant was intoxicated by loss of the normal use of his physical and mental faculties, including his poor driving and the results of the standardized field sobriety tests. Additionally, there was evidence that

Appellant's blood alcohol concentration was greater than 0.080, as evidenced by the results of his breath test, showing a blood alcohol concentration of 0.092 and 0.090.

Appellant's third and fourth points of error should be overruled as the trial court did not abuse its discretion in admitting the recordings of Deputy Kennedy's phone calls. The phone calls were relevant substantive evidence of Appellant's intoxication and constituted same-transaction contextual evidence. Additionally, Appellant has shown no case law that shows the suppression of similar evidence in similar situations.

Appellant's fifth point of error should be overruled because the evidence of Appellant's bad driving was same-transaction contextual evidence and such evidence is not subject to a limiting instruction.

## ARGUMENT

## I. STATE'S RESPONSE TO APPELLANT'S FIRST POINT OF ERROR

The United States Constitution prohibits the State from commenting on a defendant's post-arrest silence once they are given their *Miranda* warnings.[1] *Doyle v. Ohio*, 426 U.S. 610, 617-18 (1976); *Fletcher v. Weir*, 455 U.S. 603, 607 (1982). This prohibition arises from the unfairness of assuring a suspect they have the right

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

to remain silent, and then using that silence against him. *Brecht v. Abrahamson*, 507 U.S. 619, 628 (1993). The United States Constitution does not however prohibit the use of a defendant's pre-*Miranda* silence. *Fletcher v. Weir*, 455 U.S. at 606-07.

Unlike the United States Constitution, the Texas Constitution prohibits the State from using any of the defendant's post-arrest silence, whether or not *Miranda* warnings had been given. *Sanchez v. State*, 707 S.W.2d 575, 579-80 (Tex. Crim. App. 1986). Use of such silence is a violation of the prohibition against self-incrimination. *See* Tex. Const. art. I §10; Tex. Code. Crim. Proc. art 38.08; *see also Franklin v. State*, 693 S.W.420, 428 (Tex. Crim. App. 1985)(Article 38.22 of the Texas Code of Criminal Procedure has consistently been construed as prohibiting proof of an accused's silence while under arrest and which tends to communicate thoughts of the defendant of an incriminating nature).

A threshold requirement for presenting a point of error on appeal is the preservation of that error at the trial court. *See Blackshear v. State*, 385 S.W.3d 589, 590 (Tex. Crim. App. 2012), *citing Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009). If an issue has not been preserved for appeal, the court of appeals should not address that issue. *Ford*, 305 S.W.3d at 533. In order to preserve a complaint for appellate review, the record must show that the complaint was made to the court by timely objection, request, or motion, and the trial court

8

ruled on the objection, request, or motion. TEX. R. APP. P. 33.1. If a party fails to object, any alleged error has been waived. *Estrada v. State*, 313 S.W.3d 274, 302-03 (Tex. Crim. App. 2010); *see Urtado v. State*, 333 S.W.3d 418, 426 (Tex. App. – Austin 2011, pet. ref'd).

There are exceptions to the above rule. Some error is of such magnitude as to constitute a "structural defect affecting the framework within which  the trial proceeds." *Arizona v. Fulmanante*, 499 U.S. 279, 309-10 (1991); *Rey v. State*, 897 S.W.2d 333, 344-45 (Tex. Crim. App 1995). When such error occurs, an objection is not necessary to preserve it. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  The great majority of constitutional errors are not structural errors. *Batiste v. State*, 888 S.W.2d 9, 13 (Tex. Crim. App. 1994). Structural error only occurs when the error strips a defendant of basic protections without which a criminal trial cannot reliably determine guilt or innocence. *Fulmanante*, 499 U.S. at 309-10. Some examples of such error include the denial of the right of self-representation, denial of the right to a public trial, and denial of the right to assistance of counsel. *Id.*

The State's comment on a defendant's post-arrest silence is not an exception to the requirement that the complaining party preserve error. Error from a comment on post-arrest silence can be waived by failing to properly object. *Franklin*, 693

9

S.W.2d at 428; *see also Wheatfall v. State*, 882 S.W.2d 829, 836 (Tex. Crim. App. 1994), *cert denied,* 513 U.S. 1086 (1995).

In the instant case, Appellant made no objection to the State's question about Appellant's silence at the jail. Therefore, Appellant has failed to preserve and waived any alleged error and cannot bring it up for the first time on appeal.

Furthermore, even if Appellant had objected, any alleged error would have been harmless. TEX. R. APP. P 44.2(a) states that in a case of constitutional error, "the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." When performing this analysis, a court is to consider the following factors: (1) the source of the error; (2) the nature of the error; (3) whether the error was emphasized and its probable collateral implications; (4) the weight a juror would probably place on the error; and (5) whether declaring the error harmless would encourage the State to repeat it with impunity. *Orona v. State*, 791 S.W.2d 125, 130 (Tex. Crim. App. 1990). The State's question was asked in a line of questioning regarding additional statements made by Appellant. No objection was made to draw attention to the comment. Additionally, the State never brought up that question or Appellant's silence any other time throughout the trial. Given the additional evidence of Appellant's guilt, including Appellant's blood alcohol concentration of 0.092/0.090, it is highly

10

unlikely that the jury put any weight at all on that comment when reaching their verdict. For the foregoing reasons, Appellant's first point of error should be overruled and denied.

## II. STATE'S RESPONSE TO APPELLANT'S SECOND POINT OF ERROR

An appellate court reviewing the legal sufficiency of the evidence supporting a conviction must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1974); *Clayton v. State*, 235 S.W.2d 772, 778 (Tex. Crim. App. 2007). This standard places full responsibility on the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. An appellate court engaging in a legal sufficiency review must only determine whether the inferences drawn by the trier of fact are reasonable "based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Clayton*, 235 S.W.3d at 778 (quoting *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007)).

To convict Appellant for driving while intoxicated, the State had to prove beyond a reasonable doubt that appellant was intoxicated while operating a motor

11

vehicle in a public place. *See* TEX. PEN. CODE §49.04(a). "Intoxicated" means: "(a) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of those substances or any other substance into the body; or (b) having an alcohol concentration of 0.08 or more. *See id*; § 49.01(2). As will be seen below, there was more than sufficient evidence for the jury to convict Appellant for Driving While Intoxicated.

Appellant's argument that there was insufficient evidence for a jury to determine that he was intoxicated consists of three parts: (1) Trooper Stuart was unbelieveable and unreliable in his testimony; (2) Trooper Stuart's handling of the standardized field sobriety tests was incorrect; and (3) the breath test results were unreliable. (Appellant's Brief at p. 16-19).

The jury, as fact finder, is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). While Trooper Stuart testified differently at the pre-trial hearing than at trial, he explained his previous answers, and testified that his testimony at trial was correct. (RR5: 13-14). Trooper Stuart testified that he was confused during the pre-trial hearing but was then sure that his trial testimony was true and correct. It is reasonable that the

12

jury decided to believe Trooper Stuart's trial testimony, even given his prior statements.

Even if Trooper Stuart's testimony was not believable, there was sufficient other evidence that the jury could have used to believe beyond a reasonable doubt that Appellant was intoxicated. First of all, the reckless driving, speeding, and numerous traffic violations observed by Dep. Grayson show either that Appellant had lost the normal use of his mental faculties, physical faculties, or both. Additionally, Trooper Nathaniel Head, testified that while he had not seen the standardized field sobriety tests in person, given what he knew about Appellant's bad driving and having seen video of the tests, would have concluded that Appellant was intoxicated (RR5: 58-59). Lt. Dwayne Williams testified that during the booking process, he could smell an odor of alcohol on Appellant. (RR5: 74). He further testified on cross-examination that the odor was coming from his breath. (RR5: 77). He explained that he knew it was from his breath based on the distinct odor he was familiar with through his experience booking people into jail for driving while intoxicated and public intoxication. (RR5: 77). Lt. Williams also described Appellant as apologetic and disappointed. (RR5: 73-74).

Furthermore, Appellant gave two samples of his breath, the first of which showed his blood alcohol concentration to be 0.090 and the second of which showed the concentration to be 0.092. (RR5: 90; State's Exhibit 10). Both of these

tests showed a blood alcohol concentration higher that the legal limit of 0.080. Therefore, by the definition of intoxication set forth in TEX. PEN. CODE 49.01, Appellant was legally intoxicated. Appellant tries to argue that the results of the test should be discredited because their own expert witness testified that in her opinion the test results were unreliable. (RR6: 23). However, the technical supervisor testified that the Intoxilyzer 5000 used in this case was reliable, calibrated properly, and results could be relied on. (RR5: 79-105). Again, the jury, as fact finder, is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers,* at 461. A reasonable jury could easily find that the results of the breath test were valid and reliable. Therefore, because the result of the test showed a blood alcohol concentration greater than 0.080, a jury could find that Appellant was intoxicated.

There was more than sufficient evidence for a reasonable jury to find that Appellant was intoxicated. Said evidence consisted of : (1) reckless driving and multiple violations of traffic laws; (2) an odor of alcohol noticed by both the arresting officer and the booking officer at the jail; (3) four clues of intoxication from the horizontal gaze nystagmus test; (4) two clues of intoxication from the Walk and Turn test; (5) two clues of intoxication from the One Leg Stand test; (6) the testimony of Trooper Head, stating that he believed that Appellant was intoxicated; and (7) the result of the breath test. Even if you discredit Trooper

14

Stuart's testimony, the fact remains that Appellant's blood alcohol concentration was 0.092/0.090. A reasonable jury could believe beyond a reasonable doubt that the breath test results were valid and therefore, Appellant was intoxicated. Accordingly, Appellant's second point of error should be overruled and denied.

### III.   STATE'S RESPONSE TO APPELLANT'S THIRD POINT OF ERROR

A trial court's ruling on the admission of evidence under Texas Rule of Evidence 403 is reviewed under an abuse of discretion standard and should not be set aside absent a showing on the record that the trial court abused its discretion by acting in an arbitrary and unreasonable manner. *Montgomery v. State*, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990). There should be reluctance on the part of an appellate court to reverse trial court decisions that admit or exclude evidence. *Id.* at 378. The fact that a trial judge may decide a matter within his discretion in a different manner than an appellate judge does not demonstrate that an abuse of discretion has occurred. *Id.* at 380. The reviewing court should not reverse a trial judge whose ruling was within the "zone of reasonable disagreement." *Green v. State*, 934 S.W.2d 92,101-102 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997); *Montgomery*, 810 S.W.2d at 391.

Under the Texas Rules of Evidence, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the

determination of the action more or less probable than it would be without the evidence." TEX. R. EVID. 401. "Evidence which is not relevant is inadmissible." TEX. R. EVID. 402. The rules of evidence also allow for evidence to be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403.

When a defendant makes a Rule 403 objection, the trial court must weigh the probative value of the evidence against any unfair prejudice resulting from its admission. *Poole v. State*, 974 S.W.2d 892, 897 (Tex. App. – Austin 1998, pet. ref'd) (citing *Montgomery, at* 389. There is a presumption that in overruling such an objection, the trial court applied the Rule 403 balancing test and determined the evidence was admissible. *Id.* "In balancing probative value and unfair prejudice under Rule 403, an appellate court presumes that the probative value will outweigh any prejudicial effect," and therefore, "It is … the objecting party's burden to show that the probative value is substantially outweighed by the danger of unfair prejudice." *Id.* Additionally, 911 tapes are generally admissible, even if not absolutely necessary to establish any material fact not otherwise proven in the State's case, as they provide a framework within which the particulars of the State's case can be developed. *Webb v. State*, 760 S.W.2d 263, 276 (Tex. Crim. App. 1988); *Estrada v. State*, 313 S.W.3d 274, 300 (Tex. Crim. App. 2010) (911

16

call containing screams from family members upon discovering victim's body ruled admissible over Rule 403 objection as it provided framework of State's case).

The trial court's decision to admit the recordings is certainly within the zone of reasonable disagreement. The recordings were probative in showing real time evidence of Appellant's intoxication, namely the loss of the normal use of his mental and physical faculties as shown by his poor driving. They also provided a framework in which the State's case could be developed. Additionally, the burden is on the Appellant to show that the probative value of the recordings was *substantially* outweighed by the danger of unfair prejudice. *Poole*, at 897. Appellant cites no case law holding that the admission of similar evidence under similar circumstances was plain or fundamental error and thus has not met this burden. *See Barrientes v. State*, No. 03-08-00101-CR, 2009 Tex. App. LEXIS 1915, at *10-11 (Tex. App. – Austin, March 18. 2009, pet. ref'd) (not designated for publication). Rather, Appellant makes a conclusory statement that there was no purpose for the admission of the recordings except to inflame the jury. (Appellant's Brief at p. 22-23). Because Appellant has not met his burden under Rule 403, Appellant's third point of error should be overruled and denied.

## IV. STATE'S RESPONSE TO APPELLANT'S FOURTH POINT OF ERROR

17

Appellant's third point of error alleges that the trial court abused its discretion by admitting Deputy Kennedy's 911 call into evidence because its admission constituted improper bolstering of Deputy Kennedy's testimony. A trial court's ruling on the admission of evidence under Texas Rule of Evidence 403 is reviewed under an abuse of discretion standard and should not be set aside absent a showing on the record that the trial court abused its discretion by acting in an arbitrary and unreasonable manner. *Montgomery,* at 379-80. There should be reluctance on the part of an appellate court to reverse trial court decisions that admit or exclude evidence. *Id.* at 378. The fact that a trial judge may decide a matter within his discretion in a different manner than an appellate judge does not demonstrate that an abuse of discretion has occurred. *Id.* at 380. The reviewing court should not reverse a trial judge whose ruling was within the "zone of reasonable disagreement." *Green ,* at 101-102; *Montgomery,* 810 S.W.2d at 391.

Appellant cites *Cohn v. State,* 849 S.W.2d 817, 819-20 (Tex. Crim. App. 1993) to state the rule that "bolstering" is "any evidence the sole purpose of which is to convince the fact finder that a particular witness ... is worthy of credit, without substantively contributing 'to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'" The Court in *Cohn* goes on to say that TEX. R. EVID 612(c) is a codification of the bolstering rule, preventing the use of prior

18

consistent statements of a witness for the sole purpose of enhancing his credibility. *Cohn*, at 820. However, the Court also notes that "Rule 612(c) says nothing about the admissibility of substantive evidence that happens to corroborate a witness." *Id.* This Court has held that if the evidence "corroborates another witness's story or enhances inferences to be drawn from another source of evidence, in the sense that it has an incrementally further tendency to establish [a] fact of consequence," then it does not constitute bolstering. *Sarinana v. State*, No. 03-13-00167-CR, 2014 Tex. App. LEXIS 9524, at *5 (Tex. App. – Austin, August 27, 2014, pet. ref'd.) (not designated for publication) (citing *Cohn*, at 820).

The trial court's decision to admit the recordings is certainly within the zone of reasonable disagreement. Clearly, the 911 calls were not entered into evidence for the sole purpose of enhancing Deputy Kennedy's credibility. They were offered as substantive evidence of Appellant's bad driving, which is in itself evidence of intoxication. Because the 911 calls help establish the fact of Appellant's intoxication, their introduction does not constitute bolstering. *See Eun Chae v. State,* No. 13-12-00655-CR, 2013 Tex. App. LEXIS 11346 at *2 (Tex. App. – Corpus Christi, September 5, 2013, no pet.) (not designated for publication) (recording of 911 call did not constitute bolstering even though witness who called also testified at trial).

19

Additionally, the burden is on the Appellant to show that the recordings were inadmissible as mere bolstering evidence. *See Poole*, at 897. Appellant cites no case law holding that the admission of similar evidence under similar circumstances was plain or fundamental error and thus has not met this burden. *See Barrientes* at *10-11. Rather, Appellant makes a conclusory statement that there was no purpose for the admission of the recordings except to bolster Deputy Kennedy's credibility. (Appellant's Brief at p. 25). Because Appellant has not met his burden under Rule 403, Appellant's third point of error should be overruled and denied. Therefore, the recordings were properly admitted and Appellant's fourth point of error should be overruled and denied.

## V. STATE'S RESPONSE TO APPELLANT'S FIFTH POINT OF ERROR

Appellant's fifth point of error alleges that he suffered egregious harm because evidence of extraneous offenses were introduced at trial and a limiting instruction was not given instructing the jury that they could not consider that evidence in determining Appellant's character in conformity with his guilt in the present case. (Appellant's Brief at p. 29). Under Article 36.19 of the Texas Code of Criminal Procedure, if there is error in a jury charge and said error is objected to at trial, reversal is required if the error is calculated to injure the rights of the defendant. The Court of Criminal Appeals has ruled that this means that reversal is required if there is "some harm". *Almanza*, at 171. If the error was not objected to,

20

such error must be "fundamental" and thus reversal is only required if the defendant has suffered egregious harm such that the defendant has not had a fair and impartial trial. *Id.*

The evidence Appellant suggests was inadmissible as evidence of extraneous bad acts was in fact admissible as same transaction contextual evidence. The Court of Criminal Appeals has defined same transaction contextual evidence as evidence of other offenses connected with the offense charged. *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993). It is evidence which imparts information essential to undertsnading the context and circumstances of the offense which, although legally separate offenses, are blended or interwoven. *Id.* Clearly, evidence of Appellant's terrible driving, which included speeding in excess of 100 miles per hour, running multiple red lights, failing to maintain a single lane, and nearly colliding with two cars, is essential to understanding the offense of driving while intoxicated. Numerous courts have held that "bad driving" is evidence of intoxication. *Bagheri v. State*, 329 S.W.3d 23, 27 (Tex. App. San Antonio 2010) (bad driving, including striking a police car, was evidence of intoxication); *Baker v. State,* 177 S.W.3d 113, (Tex. App. – Houston [1st Dist.] 2005) (jury free to consider speeding in evaluating whether defendant was intoxicated); *Tex. Dep't of Pub. Safety v. McHugh*, 2014 Tex. App. LEXIS 11733 (Tex. App. – Austin, Oct. 24, 2014, no pet.) (traffic violation could indicate loss of mental faculties).

21

Because "bad driving" is interconnected with understanding the entirety of the offense of Driving While Intoxicated, evidence of such meets the definition of same transaction contextual evidence. Therefore, though arguably extraneous bad acts, the evidence of "bad driving" is admissible.

Not only is the evidence of bad driving admissible, but it does not need a limiting instruction as the Appellant argues it does. The Court of Criminal Appeals has held that when evidence is admitted as same transaction contextual evidence, Texas Rule of Evidence 404(b) is not implicated and the defendant is not entitled to any limiting instruction concerning the use of that evidence. *Delgado v. State*, 235 S.W.3d 244, 253 (Tex. Crim. App. 2007). The Court has also noted that when same transaction contextual evidence "is used to prove a main fact in the case, an instruction limiting the jury's consideration of this evidence is generally not required." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (citing *Porter v. State*, 709 S.W.2d 213, 215 (Tex. Crim. App. 1986)). Because the evidence Appellant argues needed a limiting instruction is in fact same transactional contextual evidence, no limiting instruction is needed and therefore, Appellant's fifth point of error should be overruled and denied.

### PRAYER

22

The State prays this Honorable Court will affirm the judgment of the trial court and overrule Appellant's first and second points of error.

Respectfully submitted,

_/s/ James J. LaMarca_____

JAMES J. LAMARCA
Assistant County Attorney
Williamson County, Texas
SBN:  24074568
405 Martin Luther King, # 7
Georgetown, Texas  78626
PHONE:  (512) 943-1111
FAX:  (512) 943-1120

## CERTIFICATE OF COMPLIANCE

I certify that this Brief contains a word count of 5,274, and thus complies with the requisites of TEX. R. APP. P. 9.4(i)(2)(C)

/s/ James J. LaMarca
JAMES J. LAMARCA

## CERTIFICATE OF SERVICE

I certify that I have sent a true and correct copy of State's Brief to Appellant's attorney of record, Kristen Jernigan, by electronic service at Kristen@txcrimapp.com, on the 8th day of May, 2015.

/s/ James J. LaMarca
JAMES J. LAMARCA